UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-20758-CR-ALTONAGA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CHARLES McARTHUR EMMANUEL,

    Defendant.
_____/

**DEFENDANT'S MOTION FOR PRODUCTION
OF LIST OF WITNESSES TO THE OFFENSE
AND A LIST OF GOVERNMENT WITNESSES**

The Defendant CHARLES McARTHUR EMMANUEL, through counsel, respectfully moves, pursuant to Fed. R. Crim. P. 16, the Sixth Amendment right to effective assistance of counsel and to prepare a defense, and to the Due Process Clause of the Fifth Amendment for production of a list of witnesses to the offense and a list of witnesses the government intends to call at trial and says:

Mr. Emmanuel is charged with conspiracy to commit torture in Liberia on July 24, 2002, with persons known and unknown to the grand jury, and with the substantive act of torture under color of state law on the same date. He is also charged with carrying and using a firearm during these crimes. The defense of this case will involve investigation like no other case ever handled by this defense attorney. It is

essential to an adequate defense that the defendant learn as much as possible about the allegations in the indictment, all of the circumstances surrounding those allegations, the victim and the testimony of all government witnesses. In short, there should be no secrets in this type of case. Effective trial preparation requires that in this case the court order the government to: (1) provide the defense the names of all, not just government, witnesses to the offense and continued detention of the victim, including the name and address of his uncle whom he called during his torture, and (2) a list of witnesses that the government does intend to call at trial.

## **Memorandum of Law**

Pursuant to Rule 16 of the Federal Rules of Criminal Procedure the court should order the government to produce the requested information because it is material to the defense. But, aside from the discovery rules, the due process clause, the Sixth Amendment right to present a defense and the supervisory powers of the court require it to order production of witness lists. This case is extraordinary and calls for the court to enter a meaningful discovery order to ensure that the defendant's Sixth Amendment rights to effective assistance of counsel and to prepare a defense and Fifth Amendment due process rights are protected.

> The federal rules are not the only source for criminal discovery, however. While "(t)here is no general constitutional right to discovery in a criminal case..." *Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S.Ct.

> 837, 845, 51 L.Ed.2d 30 (1977), in certain circumstances due process, *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (exculpatory material) or the supervisory powers of the courts, Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957) (confidential informants with relevant and helpful information) have been found to require divulgence of information in the government's hands.

*United States v. Fischel*, 686 F.2d 1082, 1091 (5th Cir. 1992)

The court has full and broad authority to order the production of information requested and which proper defense preparation requires. The offense in this case occurred more than four years ago in a country in Africa that had been experiencing years of political and civil conflict from 1997 to 2003. In 2003 the President of the country Charles Taylor, the defendant's father, was forced to leave Liberia and is now awaiting trial in the Hague for war crimes committed in the neighboring country of Sierra Leone. The conflict caused thousands of Liberians to flee and caused the death of countless others. The ex president's son is not viewed favorably in Liberia and counsel does not expect help from the population of potential witnesses in that country. The country is very poor and has little infrastructure such as roads, street addresses or medical facilities. Our State Department cautions against even traveling to Liberia.

Yet, it is into this country that the defense must try to go to investigate this case. That task may be impossible and requires the court's assistance. Given the age

of the case and the unsafe environment in Liberia, location of witnesses will be extremely difficult if not impossible. The government is in the ideal position to comply with its obligation to assure that the defendant receives a fair opportunity to defend himself. The government has traveled to Liberia and has interviewed many persons who have information about this case. The government knows who its witness will be and has the names of other persons who witnessed the offense and who have information about the victim's detention after the alleged torture. The government has already disclosed the name of one such witness who disputes the victim's claims that he was tortured by the defendant.

The defendant's need for these witness lists is most obvious when one compares the resources of the government to those of the defendant. The United States has diplomatic relations with Liberia. It has an embassy there and no doubt has government agents from various agencies stationed in the country. The U.S. Ambassador has a working relationship with the President of Liberia and the United States gives foreign aid to Liberia. It is safe to say that the government can go anywhere and do almost anything it wants in Liberia. It can interview anyone, and it can obtain Liberian government documents that it may need at trial. The defendant can do none of this. He is viewed unfavorably as a member of the hated Taylor regime that was headed by his father who is now being tried in the Hague for war

crimes committed in Sierra Leone. As far as access to witnesses and documents are concerned, we are as David to Goliath.

The indictment in this case relates events that occurred on July 24, 2002, and continued until the victim left Liberia in 2003. During that time he came into contact many individuals who thereby have information about this case. The government has had unlimited access to the victim and has thoroughly debriefed him. During those debriefings they no doubt asked him the names any persons who participated or witnessed his torture and continued detention from 2002 through his release in 2003. All of those people have important evidence–either what they saw or what they heard from the victim. All of those persons are potential defense witnesses even though they may not be government witnesses. The government knows who they are and how to contact them. We do not know who they are and cannot possibly find out.

Additionally, we need a list of the witnesses the government intends to call at trial. If we wait until these witnesses testify at trial in order to hear for the first time their testimony as to what happened more than four years ago in another country remote from the place of trial, we will never be able to effectively cross examine them or present evidence attacking their credibility. If a witness at trial relates an event that happened in Liberia, we will at that time need to ask for a lengthy recess and travel to Liberia to investigate the truthfulness of those allegations. For example, if the

victim says that he was at a particular detention facility on a particular date and told someone that the defendant was the person who tortured him, we will need to investigate this claim. Who is that witness? Was he even in the detention facility with the victim at that time? This cannot possibly be done if we hear this testimony for the first time at trial. At least if we know who the witnesses are and how to contact them we can try to interview them and get this information now, not in the middle of trial when we can do nothing to contradict it.

In this case, under these unusual circumstances, the court should exercise its discretion and order the government to provide us with a (1) a list of the witnesses it intends to call at trial and their addresses and phone umbers and (2) a list of all witnesses to the offense and the continued detention of the victim through 2003 and their addresses and phone numbers.

A court has the authority to order the government to provide the defense with a list of the witnesses it intends to call at trial. *United States v. Colson*, 662 F2d. 1389, 1391 (11th Cir. 1981), *United States v. Chaplinski,* 579 F.2d 373, 375 (5th Cir. 1978) In certain cases, the court should order the government to produce witness lists. *United States v. Vila*, 370 F. Supp 515, 520 (D.C. Conn. 1974), *citing United States v. Addonizio*, 451 F.2d 49, 64 n. 16 (3rd Cir. 1971).

> Where ... a defendant seeks legitimate information, he may not be denied it merely because the effect of providing it is to divulge the names of government witnesses or the details of the government's evidence. [internal citations omitted]. The question therefore is not whether the requested information includes the names of persons who may be called as government witnesses, but whether the circumstances of the particular case are such that the defendant's need for the requested information outweighs the government's need for confidentiality and for security of its witnesses.

A defendant should receive a witness list if he can make a particularized showing that the names of government witnesses are both material to the preparation of the defense and reasonable in light of all the circumstances. *United States v. Marquez*, 686 F. Supp. 1353, 1364 (N.D. Ill. 1988) A court has broad discretion to order disclosure of the names of witnesses in the interests of justice and to ensure fundamental fairness. *United States v. Brown,* 477 F. Supp. 492, 496 (D.C. Or, 1979)

A court should also order the government to disclose the addresses of its witnesses so that counsel may interview them. Failure to allow counsel this opportunity may be reversible error. *United States v. Opager*, 589 F.2d 799, 804 (5th Cir. 1979) "The importance to a litigant of interviewing potential witnesses is undeniable. In particular, in criminal cases, where a defendant's very liberty is at stake, such interviews are especially crucial. Thus it is that one of the first things responsible counsel does in preparing a case is to seek to interview those witnesses involved in the litigation."

In *United States v. Stroop*, 12 F.R.D. 269, 275 (E.D.N.C. 1988) the defendant requested a list of government witnesses. The court analyzed the legal principles that governed such a request and ordered the government to produce the list. The court held that to obtain a government witness list a defendant must make a specific or particularized showing that such disclosure is both material to the preparation of his defense and reasonable in light of the circumstances. The court also stated that disclosure of the identity of government witnesses is desirable at times to allow trial preparation and prevent trial by ambush but that the court must also be concerned with intimidation or harm to witnesses.

> One of the most immediate tasks for responsible counsel in preparing for any case is to seek to interview those witnesses involved in the transactions which form the basis for the litigation. Indeed, in a number of circumstances, a failure to so investigate can result in cognizable claims of ineffective assistance of counsel. In the civil context, our courts clearly recognize the importance of this task by demanding, at a minimum, that counsel exchange witness lists well in advance of trial. *E.g.,* Local Rules 25.02, 25.03(e), E.D.N.C. If this is so in the civil context, the defendants' interest in obtaining this same information in a criminal case, where their very liberty is at stake, is even more compelling.

In a case strikingly similar to the case before the court, a district court judge ordered the government to provide the defendant with a list of all eyewitnesses to the crime--not just government witnesses. In *United States v. Karake*, 281 F. Supp. 2d

302 (D.D.C. 2003), three members of the Rwandan Liberation Army were indicted for murder and other crimes arising out of an attack against American tourists in Uganda. The defendants requested the names and contact information of tourists, tour guides, employees and others who were present in the park at the time of the attack. The court found that identification of eyewitness was "material to preparing the defense" pursuant to F.R.Cr.P 16(a)(1)(E) and ordered the government to disclose the names and current addresses of any eyewitness. [1]

The court held that evidence is material under Rule 16 whether or not it is inculpatory or exculpatory, "As long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony or assisting impeachment or rebuttal." *Id* at 309 citing *United States v. Marshall*, 132 F.3d 63,68 (D.C. Cir. 1998) The court went on to say that disclosure of the names of eyewitness will almost always be material to the defense. *Karake* at 309

The *Karake* court then went on to analyze the need for the eyewitness in a paragraph that remarkably captures the essence of the problem we face in representing Mr. Emmanuel.

---

[1] The court was not acting pursuant to 18 U.S.C. 3432, applicable only to capital cases, requiring the government to provide a list of government witnesses to the defense three days before trial.

Compelling disclosure of the identities and contact information of eyewitnesses to this event is especially appropriate. The attacks occurred several years ago in a remote Ugandan rainforest, more than one hundred people were present, and the eyewitnesses are located throughout the world. This type of case 'presents a discovery dilemma quite unlike more typical criminal proceedings in which the defense can learn the identity of [eye]witnesses through available investigative techniques.' *United States v Sims*, 637 F.2d 625, 629 (9th Cir. 1980)

This is precisely the problem the defendant is having in preparing to mount an effective defense. This is truly an unusual case that calls for an awareness on the government's part of the problems this defendant is having with securing his rights to a full a meaningful opportunity to defend himself and to the effective assistance of counsel as guaranteed by the Sixth Amendment to the Constitution as well as his Fifth Amendment right to due process. The defendant asks the court to remedy these problems by ordering the government to provide the requested witness lists.

Assistant United States Attorney Karen Rochlin opposes this motion.

      KATHLEEN M. WILLIAMS
      FEDERAL PUBLIC DEFENDER

BY:    s/Miguel Caridad
       Miguel Caridad
       Assistant Federal Public Defender
       Florida Bar No. 384021
       150 West Flagler Street, Suite 1700
       Miami, FL 33130
       (305) 530-7000
       (305) 536-4559 - Fax
       miguel_caridad@fd.org, E-mail

## CERTIFICATE OF SERVICE

I hereby certify that on April 27, 2007, undersigned electronically filed the foregoing document with the Clerk of the Court using CM/ECF and has served same via U.S. Mail to those counsel(s) who are not authorized to receive electronically Notice of Electronic Filing.

                                         s/Miguel Caridad
                                         Miguel Caridad