UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  06-20758-CR-ALTONAGA

UNITED STATES OF AMERICA,

      Plaintiff,

v.

CHARLES McARTHUR EMMANUEL,

      Defendant.

_____/

**AMENDED MOTION TO SUPPRESS IN COURT AND OUT OF COURT
IDENTIFICATION AND REQUEST FOR EVIDENTIARY HEARING**

Charles Emmanuel, through counsel, moves to suppress evidence regarding the following alleged out of court photograph identifications and any future in court identifications and requests that this Court hold an evidentiary hearing regarding the circumstances of the alleged identifications, the witness' prior opportunities to observe Mr. Emmanuel, and any post event experiences which could potentially influence any subsequent identifications.

The events in this case are alleged to have taken place on various dates between April 1999 and September 2002.  In late 2006 or 2007, four of Mr. Emmanuel's accusers chose his picture out of a six picture photographic lineup.  Two of Mr. Emmanuel's accusers could not identify his photograph from the array.

Specifically, on May 11, 2007, Accuser 2 allegedly identified Mr. Emmanuel's photograph from an array containing six photographs. On May 11, 2007, Accuser 3 also allegedly identified Mr. Emmanuel's picture from the same array.  On May 10, 2007, Accuser 1, who was traveling with Accuser 2 and Accuser 3 during April 1999 when the three men were allegedly captured by the Liberian Anti-terrorist Unit, could not identify Mr. Emmanuel.

Accuser 5 identified Mr. Emmanuel's photograph on February 21, 2007. According to the Superseding Indictment, Accuser 5 complained he was tortured on dates between August 23, 1999 and October 1999.[1]

According to the Superseding Indictment, Accuser 7 was allegedly tortured by Mr. Emmanuel in September 2002. On June 28, 2007, Accuser 7 was unable to identify Mr. Emmanuel's picture in the array.

Additionally, three or four other witnesses picked Mr. Emmanuel's picture out of the same photographic array. Witness 1 and 2 allegedly identified Mr. Emmanuel's photograph on August 8, 2007. It is unclear whether Witness 3 was able to identify Mr. Emmanuel's photograph. Witness 4 (mother of Accuser 5) identified Mr. Emmanuel on August 9, 2007. It is unclear to defense counsel when the Witnesses originally witnessed Mr. Emmanuel.

An evidentiary hearing is necessary to determine the admissibility at trial of the alleged pre-trial identification of Mr. Emmanuel and any subsequent in court identifications by that same witness. The government has provided the defense with copies of photographic lineups which contain a photograph of the defendant (one of six), signatures, and handwriting indicating what choice was made. The lineup does not contain any narrative or explanation about its creation or use.

---

[1]Accuser 6 allegedly identified Mr. Emmanuel's picture in a the same photographic spread on December 5, 2006. An evidentiary hearing regarding his identification was held on June 13, 2007. The motion was renewed after defense counsel learned of Accuser 6's identity because defense counsel was unable to subpoena him to the suppression hearing. The Court ruled that Accuser 6 would be examined for the renewed motion prior to trial. As such, his identification is not addressed in this motion.

Nothing additional has been provided by the government bearing any relation to this photographic lineup. The defense needs to examine all witnesses to the identification as well as the alleged victims. The defense has been unable to speak with most of the victims and/or any witnesses to the identification about the circumstances of the identification because defense counsel cannot find them or they refuse to speak with defense counsel. Accordingly, the defense requests that the Court require the presence of all witnesses and alleged victims at this evidentiary hearing.

### **Memorandum of Law**

This case rests largely on the out of court eyewitness identifications of Mr. Emmanuel by some of his accusers. The Court must be very careful in admitting out of court eyewitness identification testimony. Such evidence has a tremendous impact on a jury, but is inherently unreliable.

A 1999 Department of Justice Study states "[t]here is little doubt today that mistaken eyewitness identification is the primary cause of the conviction of innocent people in the United States. *Eyewitness Identification—A Guide for Law Enforcement*, U.S. Department of Justice, October 1999, http://www.ojp.usdoj.gov, http://www.ojp.usdoj.gov/nij. The DNA exoneration cases, carefully tracked by the Innocence Project at the Cardozo School of Law, show that approximately 75% of these convictions of innocent persons were cases of mistaken eyewitness identification." *Eyewitness Identification Evidence: Science And Reform*, Wells, G.L, Champion, April 2005; *see also*, http:// www.innocenceproject.org.

Contrary to popular understanding, our eyes and memories do not operate like a camera on

3

which events are accurately recorded subject to retrieval at any time, but in fact memory can be altered to a significant extent by information perceived after the fact.  *See State v. Contreras*, 674 P.2d 792, 801 (Alaska Ct. App. 1983) rev'd, 718 P.2d 129 (Alaska 1986)(overruled by , *State v. Coon*, 974 P.2d 386 (Alaska 1999))(the *Frye* standard applied in this case was later overruled and replaced by the *Daubert* standard, *State v. Coon*, 974 P.2d 386, (Alaska 1999); overruled much of *Contreras*).  Also, through a process known as "unconscious transference," a person seen briefly in one context may be erroneously "recognized" in another time and place.  Thus, a crime victim may select someone from a lineup because he or she has seen that person in the neighborhood or in a previous photo lineup, rather than at the scene of the crime.  *See State v. Smith*, 65 N.C. App. 684, 309 S.E.2d 695, 696-97 (1983), rev'd on other grounds, 311 N.C. 287, 316 S.E.2d 73 (1984), and studies cited therein.  Despite such dangers, however, juries find eyewitness testimony to be highly persuasive.  *See* E. Loftus, *Eyewitness Testimony* 19 (1979), *cited in Watkins v. Sowders*, 449 U.S. 341, 352, 101 S. Ct. 654, 66 L. Ed. 2d 549 (1981) (Brennan, J., dissenting); Deffenbacher & Loftus, *Do Jurors Share a Common Understanding Concerning Eyewitness Behavior?* 6 Law & Hum. Behav. 15 (1982); Lindsay, Wells & Rumpel, *Can People Detect Eyewitness—Identification Accuracy Within and Across Situations?,* 66 J. Applied Psychology 79 (1981); Taylor, *Reliability of Eyewitness Identification,* 15 Trial Law. Q. 10 (1983); Wells, Lindsay & Tousignant, *Effects of Expert Psychological Advice on Human Performance in Judging the Validity of Eyewitness Testimony,* 14 Law & Human Behav. 275 (1980); Wells, Lindsay & Ferguson, *Accuracy, Confidence and Juror Perception in Eyewitness Identification,* 64 J. Applied Psychology 440 (1979).

It is widely accepted by courts, psychologists and commentators that "[t]he identification of

strangers is proverbially untrustworthy." Felix Frankfurter, *The Case of Sacco and Vanzetti: A Critical Analysis for Lawyers and Laymen* 30 (Universal Library ed., Grosset & Dunlap 1962) (1927) ("What is the worth of identification testimony even when uncontradicted? ... The hazards of such testimony are established by a formidable number of instances in the records of English and American trials. These instances are recent-not due to the brutalities of ancient criminal procedure."); *see also United States v. Wade,* 388 U.S. 218, 228, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) (stating that "[t]he vagaries of eyewitness identification are well-known; the annals of criminal law are rife with instances of mistaken identification"); C. Ronald Huff *et al., Guilty Until Proven Innocent: Wrongful Conviction and Public Policy,* 32 Crime & Delinq. 518, 524 (1986) ("the single most important factor leading to wrongful conviction in the United States ... is eyewitness misidentification"). In fact, "mistaken eyewitness identifications are responsible for more wrongful convictions than all other causes combined." A. Daniel Yarmey, *Expert Testimony: Does Eyewitness Memory Research Have Probative Value for the Courts?,* 42 Canadian Psychology 92, 93 (May 2001). "[E]yewitness evidence presented from well-meaning and confident citizens is highly persuasive but, at the same time, is among the least reliable forms of evidence*." Id.* Even more problematic, "jurors seldom enter a courtroom with the knowledge that eyewitness identifications are unreliable." Rudolf Koch, Note, *Process v. Outcome: The Proper Role of Corroborative Evidence in Due Process Analysis of Eyewitness Identification Testimony,* 88 Cornell L.Rev. 1097, 1099 n. 7 (2003). Thus, while science has firmly established the "inherent unreliability of human perception and memory," *id.* at 1102 (internal quotations omitted), this reality is outside "the jury's common knowledge," and often contradicts jurors' "commonsense" understandings, *id.* at 1105 n.

48 (internal quotations omitted). To a jury, "there is almost *nothing more convincing* than a live human being who takes the stand, points a finger at the defendant, and says[,] 'That's the one!' " *Watkins v. Sowders,* 449 U.S. 341, 352, 101 S.Ct. 654, 66 L.Ed.2d 549 (1981) (Brennan, J., dissenting) (emphasis in original).

The Supreme Court has established a two-part test to determine whether identification procedures are constitutional.  The first step is to determine whether the procedures used were unduly suggestive. *Manson v. Brathwaite*, 432 U.S. 98 (1977).  The second step is to determine whether, under the totality of the circumstances, the identification was reliable. *Neil v. Biggers*, 409 U.S. 188 (1972); *United States v. Beale*, 921 F.2d 1412 (11th Cir. 1991).  The factors to be considered in determining the reliability of the identification are: (1) the opportunity of the witness to view the suspect at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of his prior description of the suspect; (4) the level of certainty of the identification; (5) the time between the crime and the identification. *United States v. Beale*, 921 F.2d 1412 (11th Cir. 1991).

> 'The influence of improper suggestion upon identifying witnesses probably accounts for more miscarriages of justice than any other single factor-perhaps it is responsible for more such errors than all other factors combined.'  Suggestion can be created intentionally or unintentionally in may subtle ways.  And the dangers for the suspect are particularly grave when the witness' opportunity for observation was insubstantial, and thus his susceptibility to suggestion the greatest.

*United States v. Wade*, 388 U.S. 218, 229 (1967)(quoting Wall, *Eye-Witness Identification in Criminal Cases* 26)(quoting Williams & Hammelman, *Identification Parades*, Part I, (1963) CRIM.L.REV. 479, 482).  "Regardless of how the initial misidentification comes about the witness thereafter is apt to retain in his memory the image of the photograph rather than of the person actually seen , reducing the trustworthiness of the subsequent lineup or courtroom identification."

*Simmons v. United States*, 390 U.S. 377, 383 (1968).

Here, Mr. Emmanuel's picture was the only one of a prominent Liberian national making it unduly suggestive to a person who claims that a person from the Liberian government has tortured him. *See Marsden v. Moore*, 847 F.2d 1536, 1545-46 (11th Cir. 1988)(trial court erred by allowing in court identification of defendant during trial by a witness who was previously shown unduly suggestive photo lineup)*; O'Brien v. Wainwright*, 738 F.2d 1139, 1140-41 (11th Cir. 1984)(procedure unduly suggestive where witness was shown all black and white mug shots except for one color photograph of the defendant).

With respect to the factors considered under step two, the defense has not been provided any of that information. One fact is certain, however, the identification was made by the alleged victims a long time after the incident, rendering it susceptible to post event influences and unreliable. Accordingly, any testimony regarding the victim's alleged identification of Mr. Emmanuel should be excluded. In addition, the improper prior out of court identification has tainted the ability of the victim to make an in court identification of Mr. Emmanuel. *See Marsden*, 847 F.2d at 1545 (overly suggestive pretrial identification procedures give "frame of reference for [the] later in-court identification" making the in-court identification inadmissible).

WHEREFORE, Defendant respectfully requests that this Court require that all witnesses to the alleged out of court identification of Mr. Emmanuel appear for an evidentiary hearing on these

issues after ordering the appropriate discovery, along with any other relief the Court deems proper

and fair.

Respectfully submitted,

KATHLEEN M. WILLIAMS
FEDERAL PUBLIC DEFENDER

By:     s/John W. Wylie
        John W. Wylie
        Assistant Federal Public Defender
        Florida Bar No. 0133817
        150 West Flagler Street,  Suite 1700
        Miami, Florida 33130-1556
        Tel: (305) 530-7000
        Fax No. (305) 536-4559
        john_wylie@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing documents is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing electronically Notice of Electronic Filing.

By:     s/John W. Wylie
        John W. Wylie

8

**SERVICE LIST**

**UNITED STATES OF AMERICA v. CHARLES McARTHUR EMMANUEL**

**CASE NO.  06-20758-CR-ALTONAGA**

**United States District Court, Southern District of Florida**

Karen Rochlin, AUSA
United States Attorney's Office
99 NE 4 Street
Miami, FL 33132
305-961-9234
Fax: 536-4675
Email: karen.rochlin@usdoj.gov
CM/ECF